Mr. Romano. May it please the court. My name is Anand Romano and I'm counsel for the appellant FCI Enterprises. The district court committed three clear legal errors. Each is an independent basis for reversal of the Warner Act judgment and each is unprecedented. Mr. Romano, before we get there, could you tell us why you didn't oppose an appeal bond? Yes, Your Honor. The simple answer is we couldn't. As Your Honor knows from the record, FCI Enterprises, as of October 5, 2018, which was the day the company shut down, had no assets and had no money. After the judgment was because there was insufficient security for the for the bonds. Did you ever go back to court to ask for relief from the amount of the bond set? No, we did not, Your Honor. We had already appealed and actually filed two notices of appeal at that point. We did not go back, but we... The problem with this... Excuse me, sir. Let me just finish this one thing and then I'll... It just appears that you're thumbing in the nose at the court. They set an appeal bond. You had a judgment entered against you and for perhaps a good reason, you couldn't get a bond, but you never went back to the district court. The purpose of the appeal bond is to secure the judgment and you didn't do it and you lost. So why should we hear your case now? Yes, Your Honor. Absolutely, we were not thumbing in the nose at the court. The purpose of the appeal bond is actually not to secure the judgment. That would... The purpose of the appeal bond is to secure cost of appeal. So part of the issue... Well, tell me what the bond said. I thought it was 300 and some thousand to reflect the amount of the judgment. It was not? No, that is correct, but that is an incorrect way to calculate what an appeal bond is. Under federal rule, an appellate person... But wasn't 300 and some thousand represented then? I'm sorry, Your Honor? If the 300 and some thousand dollars was not related to the judgment, what was it related to? It was the amount of the judgment. Federal rule of appellate procedure seven, however, doesn't go towards securing the amount of the judgment. It goes to securing the cost for appeal. It is intended to secure here the plaintiff's victory so that if they are successful on appeal, they have the cost of defending their judgment on appeal paid for already. But that's not what the court did in this case. What the district court did in this case was require posting a bond of over $300,000. That is... In the first instance, the plaintiff's nor the district court even discussed how much anticipated costs on appeal there would be. That would have been the appropriate amount. Attorneys' fees and costs to brief and submit the papers. You have waived ability to challenge that. You didn't do anything. Well, we opposed the motion to dismiss, so I don't think that we've waived any arguments on the motion to dismiss. Well, you had to post a bond to proceed, didn't you? We tried to post a bond to proceed, but there was no way for the company to obtain the bond. It's an insolvent company. And so because in the initial briefing papers in our opposition to the motion for bond, we identified how much money the company had and we did tell the district court we don't have the money to do this. And yet the district court still imposed the appeal bond. If the court dismisses this case because of the failure to post an appeal bond, it would really have a terrible effect on any indigent client, any indigent party to an appeal. What that means is if you can't post a bond to pay for the appeal, then you don't have the right to appeal anymore. It takes away your right to appeal, which is a due process violation, and we've briefed that. There's no showing that these people were simply not willing to put up enough money to continue their business. No, Your Honor. You'll recall that the judgment is only against FCI, the company, and there's an affidavit attached to the opposition to our motion to dismiss. Company can't be indigent. So what is the term that you'd like us to use? Insolvent? It had no money. The company has no assets and no money, and it hasn't since it sent that email on October 5th of 2018. So if a company is insolvent, then it's excused as a matter of law from posting an appeal bond without going to the district court? I don't think that the court needs to create a bright line rule. There is a four-factor test that we've outlined in our opposition. Is there a good faith reason why a bond wasn't posted? And here, yes, we couldn't get one. We approached three different companies to try to obtain a bond. None would do it because of insufficient assets. Are there merits to the appeal? That's another one. And what that does is essentially deprive our client of a valid appeal if it simply doesn't have any money to post on the bond. The bond itself, and I would like to reiterate, the bond itself, the order for the bond itself is invalid on its face. It had nothing to do with cost of only dealt with. Counselor, let me ask you a slightly different question. So I understand your argument. This is not a valid Rule 7 appeal bond. And I'll accept that there's not a whole lot of value in asking the district court to reconsider something that you already lost on. But do you not have an avenue of appealing the appeal bond? So in other words, appealing the very order that imposed the appeal bond. I understand that going back and asking a district court to reconsider a ruling that you already lost may not be required. But are you supposed to bring it to our attention as a part of this appeal as opposed to awaiting the motion to dismiss? Well, my understanding, I think I appreciate the question. My understanding is that we only have the right to appeal a judgment. Earlier today, there was an argument on that. This is a post judgment ruling that could be brought to this court and has been brought to this court by the plaintiffs through a motion. And that was where we decided to oppose it. I don't know if we had the right. I'm not sure if we had the right or that we were even mandated to file a third notice of appeal or an amended notice of appeal, which then said we are appealing the appeal bond by the district court. At that point in time, I think your honor acknowledges we had already made our arguments before the district court. This case has a little bit of a history of us making the same arguments before the district court and being rejected. We did make our argument. It was fully grouped in the district court. Mr. Romano, why wouldn't you have the obligation? I guess maybe this is Judge Richardson's question, to come to us and say that the district court denied the motion to stay the judgment. So we shouldn't have to post the amount of the total judgment as might otherwise be required under rule of appellate procedure number 62. Did you ever give this court the opportunity to rule on that? Well, no, we did not file a for the ruling on the appeal bond. That issue obviously has been raised. As I mentioned earlier, my reading of this court's jurisdiction is only appeals over final judgments. Doesn't rule eight of the appellate rules allow that? Appealing the order, denying the motion to stay? I would have to look, your honor. I'm not suggesting that we didn't necessarily have the we didn't appeal that order at all at this point because we had already filed two notices of appeal on the merits. Obviously, at that point, we didn't know that it was going to be challenged in this court. Okay, well, let me ask you about the merits of your appeal, if I could. I'm really interested in this single site argument. And the reason why I am is that this is something that, you know, as a lifelong resident of Northern Virginia, anybody who doesn't work for the government works for a defense contractor almost. And so you have and what the paradigm for these businesses is to operate out of a very small operation with just a few employees. Then employees are scattered at non-company governmental sites, like they might be at NASA, they might be at Fort Belvoir, it might be at Fort Point Base Henderson-Meyer. They're all over the country. What if, what was wrong with the district court single site analysis? Because this is something again and again, if we don't end up, you know, dealing with it in this case. How do we, I mean, how do you address that problem? Well, the short answer is the district court didn't really provide much of an analysis on single site of employment. And it's either in its motion for summary judgment opinion, or in its Rule 52 memorandum. The legal theory that we're asking this court to adopt is actually very straightforward. There are no legal gymnastics. We're asking this court simply to apply the WARN regulations that define single site of employment found at 20 CFR 639.3 subsection I, there are eight of them. Simply apply those, simply apply the case law that has been uniformly accepted across the country to the facts of this case. And the facts really aren't in dispute. Specifically, the first subsection, those regulations talk about what is, maybe, and what is not a single site of employment. The first subsection talks about what is a single site of employment. It's a single location or a group of contiguous locations. So we look at geography. Subsection III talks about, well, if they're not right next to each other, they can still be a single site of employment if they share employees or share equipment, if they have the same operational purpose. But subsection IV talks about what a single site of employment is not. And that is, even if the sites are close, if they don't share the same employees or equipment, if they don't have the same operational purpose, then it's not going to be a single site of employment. The biggest issue with the rule on this issue is there is. And that is geographic proximity. All of the regulations talk about geographic proximity and that a single... But don't they all presume that these are all sites owned by the employer as opposed to the defense contractor paradigm where the employees are situated on government property performing the work? No, Your Honor. It doesn't presume that at all. In the regulations, there's not a scintilla of evidence that Congress, well, here in the Department of Labor, even considered property ownership. That's what the employees... The cases all involve the employer owning, like our property, Mizon, where the other employment site was the Tampa office that just their scintilla office of two employees. Is there anything in Warren Act jurisprudence that would suggest, other circuits perhaps, that would suggest in the defense contractor paradigm that the cases involving the single site analysis where the both sides have looked for a very long time to find a government contractor case. And this, as far as I am concerned, and perhaps my colleague has a different view, is a case of first impression insofar as it deals with government contractors. And Your Honor is right to point out that this case, if the plans prevail, will upend the government contracting industry because it will take these small offices based in suburban Washington, D.C. that assign their employees to permanently live and work out of other locations, military installations around the country, and it will upend it so that all of the employees are imputed. Your Honor, I'm not aware of any cases at all that even discuss property ownership. And that's because, from our view, it's not a factor. There are two cases, though. I'm worried that if we adopt your point of view, then a defense contractor, unless it's a huge one like CACI, could never be covered under the Warren Act, the employees. And you're just saying, well, that's just the way it goes. No, Your Honor. I think in many of those circumstances, they would be. So, for instance, in this case, I see my time is up. Can I finish this question, please? In those instances, say there was a Raytheon location at a Colorado military installation where there were 60 Raytheon employees. Raytheon, let's pretend, for the sake of argument, that Raytheon has a small office somewhere that has less than 50. If there was a layoff of those 50 or 60 or 70 Raytheon employees at a military installation in Colorado, that would be subject to the Warren Act because that would be a single site of employment, even though it's not a corporate headquarters. That would be. And that's what the Warren Act's purpose was. It was to protect communities, local economies from massive layoffs and workers so that they could get back on their feet again. Your Honor, I'm out of time. I'd like to reserve the rest of the time. You've saved time for rebuttal. Let's see what Mr. Weiss says. Thank you, Your Honor. Thank you. Mr. Weiss? Good afternoon. Thank you for the opportunity. My name is Brad Weiss. I represent the appellees to please the court. I'm going to start addressing the single site issue, and then I'll work back to the bond issue. So let me address this. Because it's sequential for me, I hate to ask, but can you start with the bond issue? Yes, sir. I want to pose the question that I tried to pose to your colleague. Assume, at least for my hypothetical, that I don't find an obligation to seek reconsideration in the district court. What do you point to to suggest that they are required to separately appeal or separately file a motion in the court of appeals to challenge the district court's decision on the Rule 7 bond itself? Sure. Judge Richardson, I'm going to do this by memory. I think it's in our brief as well. But as I recollect, when we were briefing this, I believe the appellate rules anticipate such an issue. It's either in Rule 7 or Rule 8 that if they're not happy with the issue of a determination of the requirement for posting a bond, they didn't even follow the rules which requires you to make a good faith effort to discuss the issue, they could appeal it to the court and raise the issue before the court. Let me ask you a question. Was there a motion to stay the judgment below? You're asking me a question. I believe there was. That's my best recollection and combination. That's my recollection. But the record would stand whatever it says in there. But I think there might have been. The reason I ask is that if I didn't see it, but I confess, I may not know the record as well as some of you do. But the Rule 8, which you mentioned, does provide a separate means of seeking relief, is limited to bonds issued to secure a stay of the judgment, which is not a Rule 7. Rule 7 is not such a bond. It's an appellate cost bond. So I'm just trying to figure out why a litigant who disagrees with the order either has to go back to the district court to seek reconsideration, which we don't typically require, or why they have to separately appeal the order in a separate notice of appeal. And where's the rule? Where am I looking for to find? As I recall, it's been a while since I looked at this issue, but there are two parts to it. Because there's one where the district court has jurisdiction over that issue. And then there's a period of time where the Court of Appeals has jurisdiction over it. And in this case, once the district court has issued it, and they then want to challenge it within the Court of Appeals, they didn't follow any of the rules whatsoever. It didn't matter because they didn't invoke any of the standards set by any of the courts. They didn't make a good faith proffer. They didn't seek to discuss or lower the bond. They didn't do any of the rules that are mandated as set forth by all the cases, the Ninth Circuit, the Seventh Circuit, in the effort to post the bond. Let me just say this. I understand, but that's a different point, right? So it looks like I've been handed by the magic fairy that there was a motion for a stay of the judgment pending appeal, and it was denied. So I'm just having trouble understanding why Rule 8 gets us there. And I understand your argument on the merits, right? But there's a separate question of whether the issue is forfeited and we're sort of, it's a full stop because they failed to pay or otherwise reconsider or challenge the bond. That's what I'm trying to get at. Yes. And I think the answer is they had the right to challenge it within the Court of Appeals, and they chose not to do that. And that's their forfeiting of it. They didn't post the bond, they didn't seek to reduce the bond, and they didn't seek to challenge it within the Court of Appeals. So therefore, I submit to you, they forfeited it in multiple ways by not posting it, by not seeking to reduce it, by not seeking to discuss it, and then by not challenging it within the Court of Appeals. And that's been symptomatic of what they've done throughout this case, in my opinion. May I continue? So let me go back fundamentally to the, I think it's the central question of the single site of employment. And if you look at the Code of Federal Regulations 20 CFR 639-3A4, it defines an employer who may have one or more employees. And throughout that section of the regulation, when they talk about single site, they talk about managing, controlling, and ownership. And that's the hallmark of what they're referring to when they talk about examples in the regulation of a auto factory owning or controlling the factories. And in this case, the record that we established was replete, that there was only one site of employment that FCI controlled, and that was the headquarters in Chantilly, Virginia. That's cited in the record. And we established in the record that they did not have any control whatsoever of any of the locations of the government installations. Yeah, Mr. Weitz, in order to prevail then, would we have to find that you qualify under subpart 8? Yes, Your Honor. The unusual organizational structure? Yes, Your Honor. And if so, how is it truly unusual when you ride the D.C. Beltway and there are just tons of these places? How can we say it's truly unusual? It's truly unusual in the sense that it doesn't fit under any of the other categories and the organizational style of this. That can't be enough, right? I mean, if it doesn't fit under the first seven, because it doesn't otherwise qualify, it must be under 8. Well, in this case, the unusual style was the operational, the business development, all of the hallmarks of the operations control center were at the Chantilly location. That is different than other examples. So, if you looked at Messon, there the plaintiff tried to fit under Category 6. If you look at some of the other cases around the circuits, you look at the breaking up of where is the operational and the control center. Here in this case, this particular case, everything was controlled out of Chantilly, every aspect of it, development, government contracts, review, personnel, everything. And in fact, the employees reported back physically as well as management-wise to the Chantilly location when they were writing contracts, when they were digging out contracts, when they were reviewing contracts, they went to the Chantilly location. Is there, can I, can I ask a question? Is there, is there any, so would, under that, would, would subsection 8 cover like basically all consulting organizations, whether, whether we're talking about defense contractors or otherwise? I mean, that's the true, for, for all consult, and maybe it does, that may not be a problem for you, but it seems like it's not just defense contractors, it's, it's all consultants. So anybody who's doing a consulting where, where people are assigned out at various places, no matter how long their assignments, that, that in your mind, that's an unusual situation, and so they fall under 8. So, Judge Christin, I, like my colleague, have searched every circuit, every case. I've gone back to look at the congressional record and the DOL when they drafted this. The one thing they made clear in 1988 was they could not forecast everything in the future, and they put in the section 8 for what they call the truly unusual organizational situation, and the reason they didn't want a situation where companies could evade the Warren Act. It's there as a notice provision. That's the purpose of it, and so I've debated in the office, could you have accounting firms or consulting firms that deploy out persons in such a situation, and the answer is, I think, circumstances. Without a doubt, FCI fits that model under 8 as the truly unusual organizational situation where everything was controlled in that one location. The only reason the personnel went to government locations is because they were doing top secret work that required them to be in black rooms, black ops rooms, whereas the only location they could actually do it. There was no signage, no areas, no leasing, no anything at any of these government sites that would identify it as FCI or in any way to indicate that they owned or controlled those sites. Those employees only went to those sites because they went into black rooms to see government information for which they could then report back to Chantilly to do their work, write their reports, review the reports, and then from there, submit them to the government, and on that basis, I believe that constitutes a single site. What counsel can't tell you is any case where those other sites, there is no control, ownership, lease, management agreement, because when you go back to the FCI had no common ownership and no control over any of those sites. The record is replete with citations to the fact that it didn't, none whatsoever. I'd like to go back to one other point if I may jump back for a second on the bond issue. In this case, the company gave retroactive termination to the employees on October 8 saying they were fired as of October 5 and didn't pay the employees for three weeks and then billed the government and collected for all of the money that it didn't pay to the employees, the same company that says it couldn't post the bond, and counsel represented to the court that as of September of 2019, the company had paid $635,000, $295,000 in legal fees. That's JA1965. For a company that is supposedly insolvent, they collected all the money that they didn't pay the employees and they were able to pay the attorney's fees as of September of 2019. I just make that point. Okay, Mr. Weiss, let's get to the number of employees. I've had trouble with the record. First of all, the district court's picking the February date, the operative date. And second, I am having difficulty finding 100 full-time employees as of the August 5, 2015 date. No problem supplying that. We have Mr. Dan Muse talking about 150 employees in August 2015. He also said there were 130 employees on October 5. I'm sorry, I got the wrong date, the wrong 2018. But he didn't seem to distinguish between full and part-time, whereas the Borne Act does. So, how do we make sense of all this involving employees? So, Mr. Muse had to admit upon examination that the PACOM report that he was referring to was a PACOM report that he pulled in March of 2019. It wasn't completely accurate. We read into the record the name of each and every full-time employee. The record identifies that as of October 5 of 2018, there were at least 130 employees. And Dan Muse testified that as of August of 2018, there were 150 employees. That's JA192, JA1652. He had testified that- When in August? I don't have the exact date because he gave a presentation to banks. It may have been around August 15 of 2018. So, are you saying, what is the operative date here for Borne Act? It's going back 60 days. I don't- So, you agree the district court used the wrong date? His report did. We then had Mr. Michael- I guess what I'm trying to figure out is, if the district court used the wrong date by using the February date, which it appears that it did, we've got to look through the record and find out if the record- We corrected that. So, there were multiple dates put into the record. So, we went through to demonstrate there was consistency in the number of employees as a result of what Mr. Muse did based on full-time employees and address part-time employees. So, we had Mr. Novitski come back up and testify on, I believe it was redirect. He testified that as of March, he had done a spreadsheet on the software because he'd been asked to do it by accounting so we could of his employment. That was JA 1827 and 1828. He testified that in January, there were 148 employees. That was true in February and March. That's JA 1831. Right, but does he distinguish between full-time and part- So, what I'm trying to get at is, it seems to me that under the Borne Act, your date that you have to establish the number of employees is August 5th. I'm going to get to that in one second. He testified that there were only three part-time employees during that time period. That's JA 1831. Mr. Novitski testified that even in August, FCI employed 142 employees and that did not fluctuate from month to month prior to or after that month. The whole point of that is that chart that he's relying on wasn't updated after March of 2018. That's why it's consistent. It's because nobody changed the chart after March of 2018. Right, so it's just old data. That's not helpful. But he's testifying that he was the one that was responsible for providing that accounting data and he said the data didn't change after those months. That's what money was. You can believe it or not believe it, but I'm just telling you what he testified to. He said that no time during the six-month period prior to August 2018 did FCI's employee count fall below 100. That's JA 2265. Was this during the trial that he was testifying? Yes, sir. Did the advisory jury help you any on these questions about the number of employees? My recollection was they didn't have a problem with it and the judge then... Were they making findings or recommendations about it? Advice? Their advisory jury, did they give any advice to the court about it? Judge King, I don't recall off the top of my head. I know that they did and then Judge Alston then gave a memorandum opinion, which he then corrected. I think there was a second but not adopting everything the advisory jury provided. He made... That's like a rule 52 findings of fact that includes the law, correct? Yes, he took out one employee that we had in there, but it was still well over 100 employees for sure. There was no question based on the because we read every employee's name that was a full-time employee one by one. In fact, I remember Judge Alston got frustrated because I had problems pronouncing some of the names. My partner had to read them in. We read every single name into the record. Yeah, but as Judge Alston said, it was October the 5th. My recollection is that that was clearly in the record that there were more than 100 employees well before August 5th and including August 5th of 2018. What are your best JA sites for the fact that there were more than 100 full-time employees on August 5th? I gave you... I think I just gave you the sites. JA 192, JA 1652, JA 2194 through 2196 and JA 2265. Thank you. I have 31 seconds left. The only thing I'll say to you in final closing is that this is a company where the two venture capitalists took out an awful lot of money. That's a separate issue. There was money to pay the employees. They decided they wanted to play chicken with the bank and not pay the employees, then bill the government, collect it, and not pay these employees. You can judge for yourself on the bond issue. Their decision to appeal not post the bond. It's a continuing course of conduct in this case. I ask you to be patient. Thank you, sir. Thank you, Your Honor. Judge Keenan, I'd like to have the opportunity to provide my best JA sites to the employee count, if I may, for August 6th of 2018. It's not August 5th. It's actually August 6th because it would be 60 days since August has 31 days. I'll start with the beginning on how you can calculate the precise full-time employee amount from the record in this case that's undisputed. We start with the PAYCOM report, which begins at JA 10-12-2051. That PAYCOM report identifies every single employee, total employees, as of October 5th, 2018. That PAYCOM report also has the hire date on the, so it's all of the employees that were working as of October 5th, and it also includes their hire date. There were 130 total employees. From that, we subtract the 30 employees that were hired after, on or after, August 6th, 2018. Obviously, we don't count them on the snapshot date if they weren't working there on the snapshot date. So, we're at 100 total employees. Counsel was right that on a trial, he crossed Dan Muse, the CFO, and elicited that there were 15 employees that were hired before February 6th, but left after August 6th. That's important because they were there, they had the tenure to be a full-time employee, but they weren't included on the PAYCOM list. So, we add those because they were working there. Those 15, there were 39 names, but only 15 fell within that category. So, we add to get 115 total employees on August 6th, but then we subtract 24, the JA sites for the Muse cross, by the way, is JA 1757-71. Then we subtract 24 that were hired between February 6th and August 6th, which means that even if they were working 40 hours a week, they weren't tenured enough to be a full-time employee under the Warren regulation. From that, we get a full-time employee count of 91 on August 5th. If there are no questions about that, Judge King, you asked about findings of facts. During the trial, I asked for a special verdict form for that exact purpose so that the advisory jury could tick off facts and assist the district court. The district court rejected my request, and so the verdict form was a general verdicts form. The judge came up with his findings of fact on his own, maybe inferred from the judgment, the advisory judgment, the advisory verdict. But the answer to your question... And in that context, if I return to general verdict, would the principle that in that situation that the facts found by the jury are taken in light of the most of the prevailing party, most favorable to the prevailing party, would that principle kick in in this kind of situation with an advisory jury? Well, the advisory jury... That's what happens if you have a civil case or a criminal case, and they return a verdict, the general verdict. And the facts found that necessary to support that verdict are viewed in the light most favorable to the prevailing party. Right? I think that's right, but we know what the facts were that the district court found, and that's really all that matters legally in terms of challenging the Rule 52 memorandum. And also recall that there was a motion for summary judgment briefing where there were several pages of undisputed material facts, none of which that really has been... This case should have been just ended on summary judgment. But I think your honor is right that we can take the facts most favorable to the plaintiffs. And in fact, on this appeal, we do. We're not challenging any of the found facts. And in fact, we are using the facts that the court found, even though some of them are not legally significant. For instance, what Judge Keenan made a comment earlier about, well, the full-time count in February is legally irrelevant. But we're taking all the facts as true. So I agree with your honor, this appeal doesn't depend on this court finding any different facts, facts that are different than what the district court found. It doesn't... We're not... This isn't a sufficiency of evidence appeal. There was one comment that was made. I see I'm running out of time. I don't know if... Well, Mr. Romano, if we're... If we agree with you that the record does not show 100 full-time employees as of the snapshot date in August, what is your remedy? Is it a remand or a final judgment? And tell me what your position is supporting the alternative that you've asserted. The remedy is final judgment. There was a full trial. There was a full summary judgment briefing. This court can resolve this on summary judgment. There was a full trial where we elicited facts, they elicited facts. The reason that remand would be futile is because based on the record, the record that I just went through, it would be clearly erroneous for the judge to find anything other than 91 full-time employees. This is, at this point, a record review. The evidence is closed. They had their opportunity to present their evidence. They didn't. The court didn't find the correct findings of fact. There is a dearth of evidence on this particular issue. If it was remanded, then it would still be 91 absent opening the trial back which I don't think would be appropriate in this. So, Your Honor, we are asking for entry of a final judgment in favor of FCI, not just for the 100 employees, but also because the way the district court has applied the Warren Act in this case is a significant judicial expansion of the way the Warren Act has been interpreted and applied for the last 30 years. And what should we do to punish you for thumbing your nose at the district court and the court of appeals on this bond issue? Your Honor, we didn't thumb our nose at all. I think the record is clear in our opposition for the motion to dismiss that we tried. We did everything that we could. Your Honor, Judge Richardson, we did file a motion to stay judgment, execution of the judgment. That was county circuit court. We've said go ahead because there's no money there. Mr. Romano, my question is, and I guess it's maybe a little widgety, but my question is when your motion to stay was denied, you're saying the appeal bond simply became one of costs, right? Correct. Okay, but the district court seemed to treat it as one securing the judgment. Given the amount that it had entered. So it looked like the district court, I don't want to say made an error, but it looked like the district court misperceived what you had to secure on appeal once the motion for stay was denied. Okay. Why wouldn't you have to bring it to the district court's attention or this court's attention? Judge, there was a mistake made here because once the motion to stay was denied, there was no purpose or no validity to securing the judgment. But effectively, what you did, I'm worried about is that you let this appeal bond order of the district court fail through as an order securing the judgment. You see what I'm saying? By not objecting to it on appeal. And it almost looks like we have an appeal bond securing the judgment, even though the motion to stay was denied. Yeah, just briefly, the appeal bond, I think your honor is right. And I'll say that the district court did err in concluding that it could use the amount of the judgment as a replacement for costs on appeals. That's a facially invalid rule seven appeal bond. So enforcing that somehow seems unjust for my client. In terms of letting it sail through, Judge Richardson, I think pointed out that federal rule of appellate procedure eight applies to supersedious bonds, to secure judgments. If we were to appeal the motion to stay execution of the bond and it was denied, I think under rule eight, we could have appealed that to this court. But we chose not to. We have limited resources. FCI is not paying me as I put in in my opposition. It's the insurance company. So federal rule of appellate procedure eight would govern that denial. Federal rule of appellate procedure, and again, this was a very quick review in my 20 minutes off, does not apply to an appeal bond. It's a facially invalid appeal bond. And I'm not aware of any requirement. Invalid, but you're not challenging the denial of the motion to stay. You can just kind of, I don't want to say ignore it, but you're not challenging the enforcement of the remedy on a failure to pay for the appeal bond, to post the appeal bond on appeal. They tried to enforce their rights for our inability to post an appeal bond on this appeal. We are opposing that on the grounds that we tried, we don't have any money, and this appeal has merit, and the district court should be reversed. Anything else, Judge Keenan, Judge Richardson? No, thanks. No, thanks. Thank you, sir. Thank you very much, your honors. Judge Keenan, Judge Richardson, do we do you need a break or you want to go to the next case?
judges: Robert B. King, Barbara Milano Keenan, Julius N. Richardson